IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



UNITED STATES OF AMERICA

v.

FABIAN ANDRES LEYTON VARGAS,

*Defendant.*

Case No. 1:18-CR-74

## STATEMENT OF FACTS

The United States and the defendant, Fabian Andres Leyton Vargas, agree that the

following facts are true and correct, and that had this matter proceeded to trial, the United States

would have proven them beyond a reasonable doubt with admissible and credible evidence:

1.      From in and around 2017 through in and around April 2018, subject to the

jurisdiction of the Eastern District of Virginia, and elsewhere, the defendant, FABIAN ANDRES

LEYTON VARGAS, did unlawfully, knowingly and intentionally combine, conspire, confederate

and agree with co-defendants ANTONIO ALDEMAR AVILA ACEVEDO and JOSE

MAURICIO CASTANEDA GARZON, and others both known and unknown, to unlawfully,

knowingly and intentionally distribute five (5) kilograms or more of cocaine, a Schedule II

controlled substance, knowing and intending and having reasonable cause to believe it would be

imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960,

and 963.

2.      It was part of the conspiracy that the defendant and his co-conspirators trafficked

multi-hundred kilogram quantities of cocaine, valued at millions of United States dollars, around

the world by causing such cocaine to be secreted aboard commercial shipping containers in the

Port of Santa Marta, Colombia.   The defendant had his co-conspirators used multiple commercial import/export companies as "front" companies to create a façade of legitimacy to conceal their cocaine trafficking activities.

3.      It was further part of the conspiracy that the defendant used his position within the Colombian Ministry of Defense, specifically as an Officer of the Colombian Air Force, to identify and contact security and law enforcement officials in the Port of Santa Marta.   The defendant and his co-conspirators targeted these same officials for bribes. After receiving these corrupt payments, these officials would then ensure that the cocaine-laden cargo containers passed uninspected through the port.

4.      In and around June 2017, the defendant and AVILA ACEVEDO approached a security and inspection officer ("Officer 1") in the port of Santa Marta, Colombia, and asked Officer 1 to assist them in smuggling cocaine through port security for export and distribution in locations around the world.   AVILA ACEVEDO offered to pay a bribe to Officer 1 in exchange for his help in facilitating their cocaine trafficking endeavors.

5.      On or about July 24, 2017, the defendant, AVILA ACEVEDO, and CASTANEDA GARZON met with Officer 1 to discuss a pending load of cocaine to be smuggled out of the port on or about July 27.   The co-conspirators discussed bribing law enforcement officers, and which bribed officials that Officer 1 should assign to assist with the inspection that day.   The co-conspirators described how the cocaine would be hidden in the shipping container, and told Officer 1 that the shipment would contain a total of 800 kilograms of cocaine.

6.      On or about July 27, 2017, the defendant, AVILA ACEVEDO, and CASTANEDA GARZON caused approximately 1,773 kilograms of cocaine to enter the Port of Santa Marta, Colombia.   The defendant and his co-conspirators intended to ship this cocaine aboard a commercial maritime vessel destined for Guatemala, which is a transshipment point for cocaine

2

destined for importation into the United States.  However, law enforcement seized the cocaine before it could depart the port.

7.     In and around August 2017, the defendant and CASTANEDA GARZON met with Officer 1 and told Officer 1 that they did not blame him for the seizure.  Instead, the co-conspirators continued to solicit Officer 1's assistance with smuggling loads of cocaine out of the port of Santa Marta.  The co-conspirators paid Officer 1 approximately $56,700 in United States currency for his assistance in facilitating their cocaine smuggling efforts.

8.     In and around October 2017, Officer 1 met with the defendant and CASTANEDA GARZON to discuss another pending load of cocaine bound for Guatemala.  When Officer 1 asked whether the shipment would ultimately end up in the United States, the co-conspirators stated that this was likely.  The co-conspirators paid Officer 1 approximately $33,000 in United States currency for his assistance in facilitating their cocaine smuggling efforts.

9.     In and around March 2018, the defendant, AVILA ACEVEDO, and CASTANEDA GARZON again solicited Officer 1's help to smuggle a shipment of cocaine out of the Port of Santa Marta.  The co-conspirators told Officer 1 that the shipment would be concealed in wooden crates containing paper in order to conceal the cocaine.  The defendant paid Officer 1 approximately $19,000 for his assistance in facilitating this shipment of cocaine.

10.    On or about March 27, 2018, the defendant, AVILA ACEVEDO, and CASTANEDA GARZON caused approximately 2,081 kilograms of cocaine to enter the Port of Santa Marta, Colombia.  The defendant and his co-conspirators intended to ship this cocaine aboard a commercial maritime vessel destined for Veracruz, Mexico, which is another transshipment point for cocaine destined for importation into the United States.  However, law enforcement seized the cocaine before it could depart the port.  The cocaine was hidden in wooden crates that appeared to contain paper, as the defendant and his co-conspirators described.

3

11. During the course and in furtherance of the conspiracy, the defendant was personally involved in the distribution of, or it was reasonably foreseeable to the defendant that his co-conspirators distributed in furtherance of the conspiracy, at least 450 kilograms of a mixture and substance containing a detectable amount of cocaine.

12. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

13. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

14. If the defendant breaches the plea agreement, then pursuant to the plea agreement, he waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Katherine E. Rumbaugh
David A. Peters
Assistant United States Attorneys

Arthur Wyatt
Chief, Narcotic & Dangerous Drug Section
Criminal Division, U.S. Department of Justice

By: _____ for TA Aminoff
Anthony Aminoff
Trial Attorney, Narcotic & Dangerous Drug Section
Criminal Division, U.S. Department of Justice

4

**Defendant's signature:** After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, FABIAN ANDRES LEYTON VARGAS, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: _July 2 2019_

_____
Fabian Andres Leyton Vargas
Defendant

**Defense counsel signature:** I am the defendant's attorney.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: _July 2, 2017_

_____
Greg Stambaugh, Esq.
Attorney for the Defendant

5